| In re TIMOTHY RAY WRIGHT, | Chapter 11 |
| | Case No. 09-BK-32244-SSC |
| | |
| | MEMORDANDUM DECISION RE: DEBTOR'S OBJECTION TO MIDFIRST BANK'S PROOF OF CLAIM |
| Debtor. | |

## I. INTRODUCTION

This matter comes before the Court on the Debtor's "Fifth Omnibus Objection to MidFirst Bank's Proof of Claim" ("Claim Objection") filed on January 25, 2012. MidFirst Bank, a Federally Chartered Savings Association ("MidFirst") filed a Response on March 7, 2012. An initial hearing on the matter was held on March 7, 2012. MidFirst filed a Supplemental Response on April 16, 2012, and an additional hearing was held on May 8, 2012. An evidentiary hearing was conducted on August 30, 2012. At the conclusion of the hearing, the matter was deemed under advisement.

In this Memorandum Decision, the Court has set forth its findings of fact and conclusions of law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure. The issues

1

addressed herein constitute a core proceeding over which this Court has jurisdiction. 28 U.S.C. §§ 1334(b) and 157(b) (West 2012).[1]

II. FACTUAL BACKGROUND

The Court must determine whether the Debtor's Objection to MidFirst's proof of claim should be sustained. For the reasons stated hereinafter, the answer is yes. This decision is predicated on a thorough analysis of the record, the facts, and the law, and not any pixie dust supplied by the Debtor and his counsel.[2] Ultimately, this is a cautionary tale woven from wealth and its loss, a proof of claim that was lost in the paperwork, and hazy memories of years past.

At the time of filing the bankruptcy petition, the Debtor owned over 240 units of rental housing on 160 separate parcels of real property.[3] On the schedules filed with the Court, the Debtor listed real estate assets having an aggregate value of $36,391,900.00, with liens encumbering said assets in the aggregate amount of $43,219,529.48.[4] The Debtor listed personal property assets with an estimated value of $1,086,588.61, and general unsecured claims in the amount of $214,217.92.[5] Thus, the Debtor could be described as a real estate investor, who utilized the income received from his numerous rental properties to subsidize a lifestyle of comfort until the value of his real estate assets dramatically declined in value.

The Debtor listed MidFirst as a secured creditor concerning several parcels of real estate. On June 15, 2007, MidFirst provided a loan of $1,400,000.00 to refinance the obligations

---

[1] All references in this decision are to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, as amended, **Error! Main Document Only.**Pub.L. 109-8, 119 Stat 23 (2005) ("BAPCPA"), unless otherwise indicated.
[2] At closing argument, counsel for MidFirst expressed concern that Debtor's counsel was presenting an argument that was from "stuff that [was] just made up."
[3] Docket Entry No. 41, Page 2, ¶ 4.
[4] Docket Entry No. 58, Schedules A and D.
[5] Id., Schedules A and F.

2

on the property located at 5195 E. Camelback Road, Phoenix, Arizona ("Camelback Property"), which loan was secured by a deed of trust on the Camelback Property.[6] At the time of filing, the Debtor estimated the Camelback Property had a value of $760,000, with an estimated unsecured deficiency claim of $686,600.00.[7] According to the parties, the amount due to the secured creditor on the petition date was $1,447,121.00.[8]

On July 18, 2007, the Debtor purchased property located at 6988 E. Paradise Ranch Road, Paradise Valley, AZ ("Paradise Ranch Property"), and MidFirst provided a loan in the amount of $1,547,000.00 to purchase the Paradise Ranch Property. The Paradise Ranch Property loan was secured by a deed of trust on the Properties. At the time of filing, the value of the Paradise Ranch Property was $975,000 with an estimated secured unsecured deficiency claim of $643,944.00.[9] The parties have agreed that the amount due on the petition date was $1,629,742.00.[10]

A. <u>CASH COLLATERAL ISSUE</u>

On January 14, 2012, MidFirst filed an objection to the Debtor's use of cash collateral ("Cash Collateral Objection").[11] In the Cash Collateral Objection, MidFirst attached the loan documents executed by the Debtor concerning the Camelback Property. In those documents, the Debtor represented that he was obtaining the loan "to refinance…[the] residence located at 5195 E. Camelback Road," that "[T]he loan was not made for any business purpose,"

---

[6] Docket Entry No. 1846, Joint Pre-Trial Statement and List of Exhibits and Witnesses Re MidFirst Claim Objection.
[7] Docket Entry No. 58, Schedule D, Page 23.
[8] Docket Entry No. 1846, Joint Pre-Trial Statement and List of Exhibits and Witnesses Re MidFirst Claim Objection.
[9] Docket Entry No. 58, Schedule D, Page 23.
[10] Docket Entry No. 1846; Joint Pre-Trial Statement and List of Exhibits and Witnesses Re MidFirst Claim Objection.
[11] Docket Entry No. 73.

3

and that "the loan documents [did] not contemplate that the Camelback Property would be rented."[12] Because the parties did not contemplate that the Camelback Property would be rented, no assignment of rents was provided by the Debtor.[13] The Debtor, however, improperly converted the Camelback Property to a multifamily rental property.[14]

As a result of the Debtor's conversion of the Camelback Property to a rental property, the Debtor argued that the Debtor could assert his strong arm powers to recover any rents generated from the Property.[15] The Debtor argued that "…secured creditors generally documented their loans to the Debtor as residential loans using simple consumer deed of trust forms."[16] As to MidFirst, the Debtor asserted that it had no assignment of rents provision as to the Camelback Property and, as a result, no perfected security interest in rents.[17] A hearing was held on this specific issue on April 29, 2010, during which the Court preserved the issue, noting that if the Debtor wished to assert its strong arm powers to receive rents for the bankruptcy estate, he needed to do so in an adversary proceeding.[18] The Court subsequently entered an order

---

[12] Id., Exhibit B, Page 2, ¶ 5.

[13] Id. An assignment of rents was provided by the Debtor to MidFirst as to the Paradise Ranch Property.

[14] Id., Page 4, ¶ 10. The Debtor did not obtain the written consent of MidFirst to change the Camelback Property to a multifamily rental.

[15] See Debtor's Motion to Determine 1) That Secured Creditors Failed to Take Affirmative Action Prepetition as Required Under A.R.S. 33-702(B) and Thus Failed to Perfect any Choate Interest in Prepetition Rents; (2) That Secured Creditors Whose Deeds of Trust Have no Assignment of Rents Provisions Have no Interest in Either Prepetition or Postpetition Rents; and (3) That Strong Arm Powers of DIP Trump Interest of Secured Creditors in Prepetition Rents, filed March 30, 2010. Docket Entry No. 226, Pages 2-4.

[16] Id., at Page 6, ¶ 9.

[17] Id., at Page 6, ¶ 10.

[18] Docket Entry No. 342. Counsel for MidFirst was present at this hearing.

4

that the Debtor could pursue his claims under Section 544, Subsections (a)(1)-(a)(3) in an adversary proceeding.[19]

B. <u>MOTION FOR RELIEF FROM STAY</u>

On January 28, 2010, MidFirst filed a Motion for Relief from the Automatic Stay ("Stay Relief Motion"), in which MidFirst requested relief to pursue its rights and remedies under Arizona law as to both Properties.[20] MidFirst alleged in the Stay Relief Motion that there was no equity in either Property, that the real estate taxes had not been paid since 2009 as to either Property, and that the Debtor had improperly converted the prepetition rents that he had received from the Properties.[21] Because of the Debtor's prepetition defaults under the loan documents, MidFirst had accelerated the principal balance due and owing on each loan, and had commenced non-judicial trustee's sales of both Properties. The trustee sales were stayed by the filing of the Debtor's bankruptcy petition.[22]

In the Motion, MidFirst requested relief from the automatic stay under § 362(d)(1) and (d)(2). Beginning at Page 4 of the Stay Relief Motion, Counsel for MidFirst presented authority for vacatur of the stay not limited to <u>in rem</u> relief.[23] At Page 6, Lines 12-14, Counsel urged that relief be granted because "simply stated, the Debtor cannot meet his burden to demonstrate that MidFirst's interests are being adequately protected. Therefore, MidFirst is entitled to immediate stay relief for cause pursuant to § 362(d)(1)."[24] MidFirst also asserted that stay relief should be granted under § 362(d)(2), since the Debtor had no equity in the

---

[19]  Docket Entry No. 395, May 14, 2010 Order.
[20]  Docket Entry No. 89, Page 1, Lines 19-21.
[21]  Id., Page 2, Lines 1-6.
[22]  Id., Page 2, ¶ 11.
[23]  Id., Page 4.
[24]  Id., Page 6, Lines 12-14.

Properties.[25] The Stay Relief Motion also stated that the Properties were not part of any single development, and that each Property was a "stand alone" asset to be independently evaluated as to whether it was necessary for the Debtor's reorganization.[26]

In the conclusion of the Stay Relief Motion, MidFirst stated that "all applicable stays and injunctions, including the automatic stay under Bankruptcy Code § 362(a), be vacated, terminated, and annulled so that MidFirst may exercise all of its rights and remedies with respect to each of the Properties…"[27] The Debtor filed an objection to the Stay Relief Motion, focusing on the necessity of the Properties for an effective reorganization.[28] The Debtor stated that MidFirst had acknowledged that the Camelback Property would become a multi-family rental at the closing of the loan between the Debtor and MidFirst.[29]

The Court conducted a preliminary hearing on the Stay Relief Motion on March 17, 2010, at which counsel for the Debtor and MidFirst appeared.[30] The Court directed that the first half and second half of the 2009 real estate taxes as to the Properties be paid by the Debtor by certain dates or the automatic stay would be vacated. The Court also set a final hearing, if necessary, on the Stay Relief Motion for May 12, 2010.[31]

---

[25] Id., Page 6.
[26] Id., Page 8, Lines 1-5.
[27] Id., Page 9, Lines 5-7.
[28] Docket Entry No. 134.
[29] Id., Page 3, ¶ 4. The Debtor stated that the Camelback Property consisted of five separate units on two lots for which the Debtor received $7,963.50 a month in rent as of January 2010. Id., Page 2, Lines 13-16. The Debtor states that the Camelback Property was in the "exclusive Arcadia area of Phoenix, AZ." The Debtor does not state that the Camelback Property was zoned for said multifamily use.
[30] Docket Entry No. 205.
[31] Id.

On March 24, 2010, MidFirst uploaded an "Agreed Order" granting relief from the stay.[32] The proposed order granted the Stay Relief Motion in all respects. The proposed order also stated that

> "MidFirst seeks relief from all applicable stays and injunctions, including without limitation, the automatic stay of § 362(a), so that MidFirst may enforce all of its rights, liens, and remedies against the Properties…"[33]

In the ordering paragraphs, there was the following language:

> "All stays and injunctions in this case, including the automatic stay of Bankruptcy Code § 362(a), with respect to the Properties shall be, and hereby are vacated, terminated, and annulled…[34]

> MidFirst is immediately entitled to enforce all of its rights and remedies in connection with the properties, including, without limitation, any acts which MidFirst may undertake or direct to obtain possession and control of the Properties pursuant to its loan and security documents entered into with the Debtor, and applicable state and federal law."[35]

The Court executed and entered the proposed order without any changes.[36]

## C. DEBTOR'S PLAN OF REORGANIZATION

On April 9, 2010, the Debtor filed his Plan of Reorganization.[37] At Page 12 of the Plan, under definitions, concerning what a secured creditor could recover after a vacatur of the automatic stay, the Debtor stated that a secured creditor could recover a "deficiency claim" "subject to applicable state law."[38] Thus, the Debtor contemplated that a secured creditor would

---

[32] Docket Entry No. 202.
[33] Id., Pages 1-2.
[34] Docket Entry No. 202, ¶ 2.
[35] Id., ¶ 3.
[36] March 25, 2010 Order, Docket Entry No. 211.
[37] Docket Entry No. 264.
[38] Id., Page 12, Definition for "Collateral Recovery," ¶ 2.1.29.

7

have the ability to pursue a deficiency claim against him, provided that Arizona state law accorded such a right.

On May 26, 2010, the Court conducted a hearing on the disclosure statement concerning this Plan.[39] On June 4, 2010, the Debtor filed a red-lined version of the Disclosure Statement focusing on the secured creditor classes.[40] In this version, the Debtor stated that the secured creditors would be able to foreclose, at some point, upon their collateral

> "…subject to any potential deficiency claims, if any, which shall be controlled by Arizona law and the terms of the loan documents and which shall, if and when established, be deemed Class 3.A. General Unsecured Claims."[41]

MidFirst was specifically listed in the classes of unsecured creditors, with the ability to pursue a deficiency claim, if the creditor had such a right under Arizona law.

At Page 28 of the Disclosure Statement, the Debtor added a new section focusing on deficiency issues and whether the Plan was a "Superior Outcome to Foreclosure." The Debtor discussed various provisions of Arizona law, asserting that most of his properties were 2 ½ acres or less, single one-family or single two-family dwellings, for which no deficiency could be recovered.[42] If the secured creditor were entitled to a deficiency claim, the Debtor did not necessarily require a proof of claim as the basis to set forth the deficiency, but did state that such a creditor did need to pursue its rights and remedies under Arizona law within the requisite constraints. [43]

---

[39]  Docket Entry No. 438. Counsel for MidFirst was present at this hearing.
[40]  Docket Entry No. 462. Classes 2A through 2V considered the treatment of secured creditors. MidFirst Bank was placed in Class 2(N)(1) and 2(N)(2).
[41]  Id., Page 22, Lines 11-18.
[42]  Id., Pages 28, 34.
[43]  Id., Pages, 28, 33-34.

8

Because the Debtor believed that most secured creditors did not have a right to deficiency claims, and because the Plan proposed payments to secured creditors on the unsecured portion of their claims, the Debtor considered the Plan a "Superior Outcome" to what the secured creditors would receive if they foreclosed. The Debtor stated that most, if not all, of the loans were "functionally nonrecourse" if the stay were vacated.[44] The Debtor stated:

> "…the foregoing anti-deficiency principals[sic] will have the effect of reducing the amount of potential unsecured claims arising from post-foreclosure deficiencies."[45]

The Debtor's Plan and revised Disclosure Statement, thus, alerted secured creditors as to the Debtor's assertion that secured creditors, if they believed they had deficiency claims, should timely assert their rights under Arizona law. A hearing was also held on this Disclosure Statement on June 10, 2010.[46]

### D. THE DEBTOR'S ADVERSARY PROCEEDING AGAINST MIDFIRST

On July 20, 2010, the Debtor filed an Adversary Proceeding against MidFirst to recover prepetition rents on certain properties for the benefit of the bankruptcy estate.[47] In the Adversary Proceeding, the Debtor asserted that he would use the powers under Bankruptcy Code Section 544, 547, 549, and 542 to recover prepetition rents as property of the bankruptcy estate.

In the Complaint, the Debtor stated that he was the former owner of the Camelback Property, having transferred it to another party around April 20, 2010.[48] The Complaint states that a nonjudicial foreclosure sale of the Camelback Property occurred on April

---

[44] Id., Pages 34-35.
[45] Id., Page 35, Lines 21-24.
[46] Docket Entry No. 502. Counsel for MidFirst was not present at this hearing.
[47] Adversary No. 2:10-ap-01353, <u>Timothy Ray Wright</u> vs. <u>MidFirst Bank, a Federally Chartered Savings Association</u>.
[48] Adversary No. 2:10-ap-01353. Docket Entry No. 1, Page 4, ¶ 11, Lines 8-13.

9

30, 2010, with MidFirst being the highest bidder by way of a $1,000,000.00 credit bid creating a potential substantial deficiency.[49]

On September 9, 2010, MidFirst filed a Motion to Dismiss the Complaint.[50] In the Motion, MidFirst referred to the Stay Relief Motion, which had already been filed. MidFirst stated that after "extensive negotiation," the Debtor had entered into a stipulation vacating the stay.[51] The hearings on the Motion to Dismiss were continued, from time to time, as a result of the Debtor's amending his Complaint and, later, the parties desire to resolve all issues between them.

Finally, on May 9, 2011, the parties filed a Joint Motion for Approval of Compromise ("Joint Motion"), stating that all pending claims in the Adversary Proceeding had been resolved.[52] The Motion stated that "[T]he Adversary Proceeding and all claims brought in connection therewith shall be dismissed <u>with prejudice</u> following the entry of the Agreed Order within five days of the approval of the Agreed Order."[53] (Emphasis added.) The Motion provided that the Stay Relief Order between the parties would remain "effective and undisturbed."[54] On June 8, 2011, the Joint Motion setting forth the settlement was approved by Court order.[55] On July 6, 2011, MidFirst filed a Motion to Compel the Debtor to comply with the aforesaid settlement,[56] but the Motion was quickly resolved.[57]

---

[49] Id., Page 6, ¶ 22, Lines 7-9.
[50] Adversary No. 2:10-ap-01353. Docket Entry No. 5.
[51] Id., Page 7, ¶ 22.
[52] See Administrative Case, Docket Entry No. 1222.
[53] Id., Page 7, ¶ 19(h).
[54] Id.
[55] Docket Entry No. 1277.
[56] Docket Entry No. 1342.
[57] Docket Entry No. 1379.

E.  <u>THE MIDFIRST PROOF OF CLAIM</u>

On April 28, 2010, MidFirst filed its original proof of claim concerning the Camelback Property.[58] On August 22, 2011, an amended proof of claim ("Amended Claim") was filed by MidFirst, referring to the trustee's sale of the Camelback Property.[59] The Amended Claim was filed after the Adversary Proceeding, resolving all claims between the parties, was dismissed with prejudice. The Amended Claim stated that "MidFirst [had] a valid unsecured deficiency claim in the amount of at least $447,121…"[60] Although the Amended Claim referred to the trustee's sale occurring on April 30, 2010, as to the Camelback Property, this was the first reference to any type of deficiency claim that MidFirst had.

F. <u>EVIDENTIARY HEARING ON DEBTOR'S CLAIM OBJECTION</u>

Although MidFirst requested an evidentiary hearing on the Debtor's Objection to proof of claim, because certain factual issues had not been resolved, the evidentiary hearing ultimately was not warranted.  At a prior Rule 7016 Scheduling Conference on the matter, MidFirst's Counsel stated that former counsel for MidFirst and the Debtor had discussed whether MidFirst should initially have *in rem* relief from the stay, and request further relief if MidFirst wished to pursue the Debtor personally.  However, the evidence was to the contrary. Former counsel for MidFirst and former counsel for the Debtor never had any discussion concerning the "Agreed Order" vacating the stay. They both testified that former counsel for MidFirst electronically forwarded the Order to former counsel for the Debtor, and former counsel for the Debtor simply affirmed that his signature could be placed electronically on the Order.  Although MidFirst's former counsel attempted to testify as to how he would interpret the Order, the

---

[58] Claim No. 92-1.
[59] Claim No. 92-2.
[60] Id.

11

Debtor's Counsel correctly objected to such testimony, stating that since there was no discussion between the parties to modify or affect the Order, only the Court should interpret the Order's meaning.

### III. DISCUSSION

11 U.S.C § 506 states that a secured creditor's interest in the debtor's interest in property may be bifurcated into a secured and unsecured claim, if the amount of the unsecured creditor's debt exceeds the value of the debtor's interest in the subject property. The parties may agree to the value of the debtor's interest in the property, or the Court may have to value that interest at a confirmation hearing. Even if the secured creditor has a prepetition nonrecourse claim, under applicable state law, the secured creditor may request that the claim be considered recourse for purposes of plan confirmation and other purposes. *See* 11 U.S.C. § 1111(b)(1)(West 2012).

If a debtor disputes the proof of claim that has been filed by a secured creditor, the debtor may object to the proof of claim. 11 U.S.C. § 502(d)(West 2012). However, if the debtor challenges the nature, extent, and validity of the lien, the debtor will file a separate adversary proceeding. *See* Rule 7001 of the Federal Rules of Bankruptcy Procedure.

The Debtor, in this case, has consistently challenged the ability of various secured creditors to obtain a deficiency judgment against him. The Debtor has described the secured nature of the claims, but has challenged the ability of said secured creditors to assert a deficiency claim against him, irrespective of Section 1111(b)(1)(West 2012). The Court has set forth, in detail, the Debtor's assertions that MidFirst utilized a residential mortgage as to the Camelback Property that contained no assignment of rents clause. Moreover, the parties have disagreed,

almost from the commencement of the case, as to whether MidFirst had any right to a deficiency judgment on the Camelback Property.

In the Plan and Disclosure Statement, the Debtor alerted the secured creditors, including MidFirst, that if said creditors believed they had a deficiency claim, they should timely assert same under applicable state law. The Debtor also filed an Adversary Proceeding against MidFirst, challenging the nature, extent and the validity of its lien. The parties resolved said Adversary Proceeding, and dismissed it with prejudice. It was only after the Adversary Proceeding had been dismissed with prejudice that MidFirst amended its proof of claim and asserted a deficiency claim. It was only after the Debtor objected to the MidFirst Amended Claim that MidFirst asserted any kind of an agreement to preserve the deficiency claim. At a very basic level, what MidFirst did was too little, too late.

MidFirst has made a number of arguments as to why the Court should overrule the Debtor's Claim Objection, and allow its deficiency claim. The Court will address each argument in turn.

A. <u>WHETHER THE SCOPE OF THE AGREED ORDER CONCERNING THE MOTION FOR RELIEF FROM THE AUTOMATIC STAY LIMITED THE RELIEF THAT MIDFIRST COULD SEEK</u>

MidFirst argues that the Claim Objection should be overruled, because MidFirst was granted only *in rem* relief from the automatic stay to pursue its state law remedies against the Properties.[61] The Court disagrees.

The Stay Relief Motion was filed on January 28, 2010, and requested broad-based relief, such as MidFirst's request that "all applicable stays and injunctions, including the

---

[61] MidFirst's argument that the filing of the proof of claim constituted a timely action to obtain a deficiency judgment under Arizona is discussed in Part III(B) of this decision.

automatic stay under Bankruptcy Code Section 362(a), be vacated, terminated, and annulled so that MidFirst [might] exercise all of its rights and remedies with respect to each of the Properties…"[62] The Court entered the Agreed Order granting MidFirst's Stay Relief Motion on March 25, 2010.[63] The Agreed Order included the same broad language, with no limitations or qualifications.[64] Nothing in the language of the Agreed Order purports to limit the scope of the stay relief.

After reviewing the Agreed Order, analyzing the evidence submitted by the parties, including the testimony of former counsel to the parties who drafted said Order, the Court concludes that there is no evidence to indicate that the parties intended to limit the agreed relief only to a foreclosure of the Properties. The language of the Agreed Order allowed MidFirst to pursue all remedies under applicable law, including the commencement of one or more deficiency actions. Moreover, since MidFirst requested relief from the automatic stay as to both Properties, and the Paradise Ranch Property was rented at the time, the Debtor had previously provided an assignment of rents clause as to said Property, and the Paradise Ranch Property was separately subject to a deficiency claim, there would no reason for Midfirst to limit its relief from the automatic stay to solely *in rem* relief. As one court has aptly stated:

> "When . . . this Court modifies or terminates the automatic stay provided by Section 362 to allow a party to commence or continue a pending state court mortgage foreclosure proceeding against a debtor's real property, it is the Court's expectation that it has modified or terminated the stay for the completion of all related state court mortgage foreclosure proceedings, including the establishment of any deficiency judgment, unless any such state court proceedings are specifically excepted by the order."

In re Tyler, 166 B.R. 21, 25 (Bankr. W.D.N.Y. 1994).

---

[62] Docket Entry No. 89, Page 8, Lines 1-5.
[63] Docket Entry No. 211.
[64] Id.

14

Although New York is a judicial foreclosure State, requiring a secured creditor to file a complaint in the court with appropriate jurisdiction to foreclose on its mortgage, and Arizona permits nonjudicial and judicial foreclosure of a mortgage or deed of trust, the analysis is similar. A secured creditor in New York or Arizona may proceed with all of its rights and remedies under state law, unless certain actions are excepted in an order vacating, modifying, or terminating the automatic stay. This Court entered the Agreed Order, which provided broad-based relief to MidFirst. There is no reason, on this record, to limit the scope of the Order as MidFirst now suggests.

Finally, as the facts clearly reflect, to the extent that Midfirst believed it was entitled to pursue some type of *in personam* claim against the Debtor, in the form of a deficiency action, MidFirst failed to take any action within a reasonable period of time.

B. WHETHER THE ORIGINAL MIDFIRST PROOF OF CLAIM PRESERVED MIDFIRST'S RIGHT TO PURSUE A DEFICIENCY CLAIM

MidFirst filed its original proof of claim on April 28, 2010. This was a month after the Court had entered the Agreed Order for stay relief. The proof of claim listed a claim amount of "at least $3,076,863."[65] Both the Camelback Property and Paradise Valley Property were sold at a trustee's sale on April 30, 2010. Pursuant to A.R.S. § 33-814(West 2012), MidFirst had ninety (90) days to bring a deficiency action. According to MidFirst, the anti-deficiency statute was satisfied when it filed its original proof of claim on April 28, 2010. MidFirst subsequently filed an Amended Claim on August 22, 2011 – more than a year after the trustee's sales. The Amended Claim now asserts a claim of "at least $447,121."[66]

---

[65] Claim No. 92-1.
[66] Claim No. 92-2.

MidFirst's argument is simple. Once a proof of claim is filed in accordance with Bankruptcy Code Section 501, the claims allowance process is triggered, and any need for a creditor to commence a separate court deficiency action is obviated. Given the facts of this case, this Court disagrees.

Claim allowance is the province of Bankruptcy Code Section 502. In re Warkentin, 461 B.R. 636 (Bankr. D. OR 2011). Pursuant to Section 502(a), a claim filed under Section 501 is allowed unless a party in interest objects. Id. Section 502(b) provides that if a claim objection is filed by a party in interest, the court, after notice and a hearing, will determine the amount of the claim, and allow the claim in such an amount, subject to specific exceptions. Id. However, pursuant to Section 502(b)(1), a claim will be disallowed to the extent that the claim is unenforceable against the debtor under non-bankruptcy law.

Here, the applicable "non-bankruptcy law" is Arizona law. In re Rhead, 179 B.R. 169 (Bankr. D. Ariz. 1995). In Arizona, one of the statutes that protect borrowers from lenders seeking to collect debts that remain outstanding after a foreclosure on property is A.R.S. § 33-814 (West 2012).[67] A.R.S. § 33-814(A) requires that a creditor commence an action to recover a

---

[67] For the purposes of this Memorandum Decision, the applicable provisions of A.R.S. § 33-814 (West 2012) provide as follows:

"A. Except as provided in subsections F and G of this section, within ninety days after the date of sale of trust property under a trust deed pursuant to § 33-807, an action may be maintained to recover a deficiency judgment against any person directly, indirectly or contingently liable on the contract for which the trust deed was given as security including any guarantor of or surety for the contract and any partner of a trustor or other obligor which is a partnership. In any such action against such a person, the deficiency judgment shall be for an amount equal to the sum of the total owed the beneficiary as of the date of the sale, as determined by the court less the fair market value of the trust property on the date of the sale as determined by the court or the sale price at the trustee's sale, whichever is higher. A written application for determination of the fair market value of the real property may be filed by a judgment debtor with the court in the action for a deficiency judgment or in any other action on

deficiency within ninety days from the sale of the property.  In the absence of an action to recover a deficiency judgment within ninety days, a foreclosure price is deemed in full satisfaction of the underlying obligation and prohibits any other action to recover a deficiency. A.R.S. § 33-814(D).

In support of its position, MidFirst relies on the decision of <u>In re Hopkins</u>, 328 B.R. 575, 580 (Bankr. D. Utah 2005) for the proposition that a claimant may satisfy the requirements of commencing a civil action by filing a proof of claim. Therefore, according to

the contract which has been maintained. Notice of the filing of an application and the hearing shall be given to all parties to the action. The fair market value shall be determined by the court at a priority hearing upon such evidence as the court may allow. The court shall issue an order crediting the amount due on the judgment with the greater of the sales price or the fair market value of the real property. For the purposes of this subsection, "fair market value" means the most probable price, as of the date of the execution sale, in cash, or in terms equivalent to cash, or in other precisely revealed terms, after deduction of prior liens and encumbrances with interest to the date of sale, for which the real property or interest therein would sell after reasonable exposure in the market under conditions requisite to fair sale, with the buyer and seller each acting prudently, knowledgeably and for self-interest, and assuming that neither is under duress. Any deficiency judgment recovered shall include interest on the amount of the deficiency from the date of the sale at the rate provided in the deed of trust or in any of the contracts evidencing the debt, together with any costs and disbursements of the action.

...

...

D. If no action is maintained for a deficiency judgment within the time period prescribed in subsections A and B of this section, the proceeds of the sale, regardless of amount, shall be deemed to be in full satisfaction of the obligation and no right to recover a deficiency in any action shall exist.

...

...

G. If trust property of two and one-half acres or less which is limited to and utilized for either a single one-family or a single two-family dwelling is sold pursuant to the trustee's power of sale, no action may be maintained to recover any difference between the amount obtained by sale and the amount of the indebtedness and any interest, costs and expenses."

17

MidFirst, A.R.S. § 33-814 was satisfied when MidFirst filed its original proof of claim on April 28, 2010 – prior to the trustee's sales. However, the Hopkins decision may be distinguished from the facts and law in this matter.

In the Hopkins case, a creditor moved for relief from the automatic stay on two of the debtor's properties following the filing of the bankruptcy petition. An order was entered allowing the stay to be terminated as to only one of the properties in March 2004. The stay relief order provided that all other issues were reserved for future proceedings. A non-judicial foreclosure was completed on the property no longer protected by the automatic stay in April 2004. The original proof of claim listed both properties as collateral. The creditor did not amend its proof of claim following the foreclosure. The debtor argued that the creditor failed to commence an "action" on the deficiency claim following the foreclosure; therefore, the creditor was barred by Utah law from seeking to collect from the debtor.

The creditor, in Hopkins, did not file anything during the ninety days following the foreclosure. Id. at 580-81. Contrary to MidFirst's assertions, the Hopkins court actually held that the Utah statute at issue was not jurisdictional in nature, and the fact that no action was brought during the relevant statutory period did not divest the bankruptcy court of jurisdiction over the deficiency claim. Id. at 580. The court determined that the creditor's original proof of claim for the full amount owed (filed prior to the foreclosure sale), and its motion for relief from the automatic stay, were sufficient to put the debtor on notice of the creditor's intention to pursue the deficiency. Id. The court also found that the stay relief order contained a carve-out for continued claims litigation between the debtor and creditor; therefore, the creditor could not have commenced a deficiency action in state court during the ninety days because of the automatic

stay. Id. at 581. Based on said facts, the court determined that it had jurisdiction to administer the deficiency claim. Id.

The Hopkins case is distinguishable from this matter for several reasons. First, MidFirst cites the Hopkins case for a proposition for which it does not directly hold; that is, the filing a proof of claim within the ninety days following a foreclosure sale constitutes a deficiency "action" within the meaning of the state deficiency statute. Rather, the court was focused on whether it had jurisdiction to hear certain matters. Second, in determining that the proof of claim and stay relief motion were sufficient to put the debtor on notice of the creditor's intent to pursue the deficiency claim, the court in Hopkins relied on a Utah Court of Appeals decision for support. Here, MidFirst has failed to cite to any Arizona case law interpreting A.R.S. § 33-814, let alone for the proposition that it asserts. Moreover, it has been the Debtor, in this case, that has put secured creditors on notice, in the Plan, Disclosure Statement, and in other pleadings, that the secured creditors do **not** have deficiency claims. If notice were the only issue, the Debtor has certainly provided such notice on numerous occasions. Finally, the underlying stay relief order in Hopkins clearly contained an express carve-out for continued claims litigation between the debtor and creditor, so the automatic stay barred a deficiency action in state court during the ninety-day statutory period. Here, as discussed above, MidFirst obtained a broad stay relief order, with no express limitations or qualifications. For the reasons set forth, the Court finds the decision of Hopkins distinguishable and not precedential.

MidFirst does cite to Arizona cases holding that an action initiated against a debtor prior to a trustee's sale is treated by courts as being properly maintained post-foreclosure for purposes of A.R.S. § 33-814, without the need to file a new "deficiency action" within ninety days after the trustee's sale. See Valley National Bank v. Kohlhase, 182 Ariz. 436, 897 P.2d 738

(App. 1995); <u>RTC v. Freeway Land Investors</u>, 798 F. Supp. 593 (D. Ariz. 1992). However, these cases related to the commencement of a lawsuit prior to the trustee's sale, and they did not address whether a proof of claim in bankruptcy constitutes an "action" under A.R.S. § 33-814.

MidFirst also cites to the decision of <u>In re Laurel Hill Paper Co.</u>, 393 B.R. 372, 401 (M.D.N.C. 2008), for the proposition that a claimant may satisfy the requirement of commencing a civil action by filing a proof of claim in the bankruptcy court. In the <u>Laurel Hill Paper</u> decision, at issue was whether contractors and material suppliers asserting mechanics' and materialmen's liens under North Carolina law had perfected liens against the proceeds of assets sold by a Chapter 11 debtor. The court considered certain mechanics' and materialmen's liens for which certain subcontractors had failed to file an action to enforce said liens within the 180 days following completion of their work for a debtor then in bankruptcy. The court followed the state statute's specific mechanism in the event of a pending bankruptcy, which allowed the liens to be enforced if each of the claimants, filed both a proof of claim in the bankruptcy and filed and recorded a notice of lis pendens. <u>Id</u>. Because the claimants had only filed proofs of claim, and had failed to file notices of lis pendens, the court disallowed their claims. <u>Id</u>.

The <u>Laurel Hill Paper</u> decision does not support MidFirst's position. First, the decision focuses on statutory liens, not deficiency claims. Second, the court relied on a North Carolina statute that had been amended to address specifically those situations where a bankruptcy was pending during the 180 days that an action had to be commenced to enforce a lien and the automatic stay prevented the filing of said action. In Arizona the deficiency statute is silent on what constitutes an "action" that must be filed within the ninety days, and MidFirst has cited no authority interpreting it to encompass the filing of a proof of claim.

The Arizona anti-deficiency statute has been interpreted by Arizona courts to be a statute of repose. <u>Valley National Bank of Arizona v. Kohlhase,</u> 182 Ariz. 436, 897 P.2d 738 (Ariz. App. Div. 1 1995); <u>Resolution Trust Corp. v. Olson,</u> 768 F.Supp. 283 (D.Ariz.1991). Statutes of repose limit the time in which a cause of action may be brought. As contrasted with statutes of limitations, which extinguish the right to proceed with an accrued cause of action, statutes of repose extinguish the actual action. <u>U.S. v. Rezzonico</u> 32 F. Supp. 2d 1112 (D.Ariz. 1998). In other words, once a statute of repose has expired, a valid cause of action no longer exists. <u>Id</u>. In the decision of <u>Resolution Trust Corp. v. Olson</u>, 768 F.Supp 283 (D. Ariz. 1991), the Resolution Trust Corporation (RTC) filed suit seeking a deficiency against the guarantors of a loan. RTC, as conservator, filed a motion for partial summary judgment seeking an order declaring the guarantors' liable for a deficiency judgment, after a trustee's sale had been conducted in April 1990. The underlying loan had been made to a partnership but guaranteed by the Olsons. The original complaint contained request for a deficiency judgment, but a subsequent amended complaint, filed before the Olsons were required to answer, eliminated the deficiency language. Six months after the trustee's sale, the RTC realized its error and attempted to file a second amended complaint reinstating the deficiency claim. The Olsons argued that under A.R.S. § 33-814(D), the entire deficiency action was barred because the second amended complaint had been filed 175 days after the trustee's sale. The RTC argued that the second amended complaint related back to the original complaint. The Arizona District Court ruled that the ninety-day limit was a statute of repose and that Fed.R.Civ.P. 15(c) did not apply. The court reasoned that if a statutory time limitation is part of a substantive right, Fed.R.Civ.P. 15(c) did not apply to relate back to an untimely complaint. Therefore, the RTC had no right to recover a deficiency judgment against the guarantors under the statute.

The <u>Olson</u> case, while not directly on point, does provide this Court with some guidance on how to interpret A.R.S. § 33-814(D). Of importance is the court's analysis that the applicable statute, A.R.S. § 33-841 (D), creates a substantive right. See also <u>Brink v. First Credit Resources</u>, 57 F. Supp. 2d 848 (D.Ariz. 1999). The courts should tread carefully when abridging or modifying substantive rights. "The federal bankruptcy court should take whatever steps are necessary to ensure that the mortgagee is afforded in federal bankruptcy court the same protection he would have under state law if no bankruptcy had ensued ." <u>Butner v. U.S.</u>, 440 U.S. 48, 56, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); see also <u>BFP v. Resolution Trust Corp.</u>, 511 U.S. 531, 544–45, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) (noting that in the mortgage foreclosure context, unless there is clear statutory language to the contrary, the Bankruptcy Code "will be construed to adopt, rather than to displace, pre-existing state law"). Thus, if a substantive right is lost under state law, the bankruptcy court should not resurrect said right.

The Court also finds the reasoning and analysis of the decision of <u>In re Tyler</u>, 166 B.R. 21 (Bankr. W.D.N.Y 1994), persuasive in determining that MidFirst's failure to commence a deficiency action in a timely manner, pursuant to state law, has resulted in its right to a deficiency claim being extinguished in the bankruptcy case. In <u>Tyler</u>, the Chapter 13 debtor and creditor, Keycorp, entered into an agreed stay relief order on April 15, 1993 that allowed the creditor to foreclose on certain real property in the event the debtor defaulted in making any payments required by the order. <u>Id</u>. at 23. On June 7, 1993, an order of confirmation was entered confirming the debtor's Plan. <u>Id</u>. On March 14, 1994, Keycorp filed a motion for leave to file a late, supplemental claim as unsecured creditor. <u>Id</u>. Keycorp had originally filed a secured proof of claim for prepetition arrearages. However, a sale of the real property had been conducted in a state court mortgage foreclosure proceeding on August 3, 1993, and after distribution of the sale

proceeds, a deficiency amount was due to Keycorp. Id. Keycorp requested that the court permit it to file a proof of claim for the deficiency amount to be allowed in the debtor's Chapter 13 case.

In denying the requested relief, the Tyler court focused on New York Real Property Actions and Proceedings Law Section 1371 ("RPAPL § 1371"). Pursuant to RPAPL § 1371, if a mortgage holder wishes to obtain a deficiency judgment in connection with a mortgage foreclosure proceeding in the state of New York, it must file a motion for an order confirming the foreclosure sale and requesting the entry of a deficiency judgment within ninety days after the delivery of the foreclosure sale deed to the purchaser. Tyler, at 24. Failure to comply with Section1371 will result in the proceeds of the mortgage sale to be deemed in full satisfaction of the mortgage debt, eliminating the right to recover any deficiency in any action or proceeding. Id. The court noted that Keycorp had failed to take the required action within ninety days as required by state law; and as a result, it no longer had a claim to pursue against the debtor pursuant to Bankruptcy Code Section 502.

The Court is cognizant of the fact that the Tyler decision is predicated on an analysis of New York law. However, the underlying statute requiring a creditor to take action within ninety days to preserve its deficiency claim is analogous to A.R.S. § 33-814. The purpose of both RPAPL § 1371 and A.R.S. § 33-814 is the same. The statutes provide a procedure to obtain a deficiency judgment that can be properly determined based on the fair market value of the property. Citibank (Arizona) v. Bhandhusavee., 188 Ariz. 434, 436 (Ariz. App. Div. 1 1996); In re Tyler, 166 B.R. 21 (Bankr. W.D.N.Y 1994). The Tyler court stated that the state court proceedings will establish the **right** to have a deficiency claim and amount thereof, but the creditor will still be unable to **enforce** the judgment. Id. at 25. In Tyler, the court correctly summarized a critical distinction; that is, once the deficiency judgment is properly obtained, a

creditor must file a proof of claim or properly amend a previously filed proof of claim to receive a distribution in a bankruptcy proceeding. Id. at 25. However, since MidFirst lost the substantive right to obtain a deficiency claim under Arizona law, as previously discussed, it no longer has the ability to amend the proof of claim to receive a distribution as an unsecured creditor in the Debtor's bankruptcy proceedings.

In addition to the statutes being similar, the facts in Tyler mirror those in this case. In Tyler, the court modified the automatic stay, pursuant to an agreed order, to allow the parties to continue and/or commence pending state court mortgage foreclosure proceedings against the real property. Here, the Debtor and MidFirst entered into their own Agreed Order. MidFirst was to "enforce all of its rights and remedies in connection with the properties… without limitation…."[68] Notably, and as previously discussed, the court in Tyler stated that when the court modifies or terminates the stay, it is broad-based relief, unless the court specifically carves out a limitation. Id. at 25. Following the modification of the stay in both cases, the properties at issue were sold via trustee's sales or pursuant to state court mortgage foreclosure proceeding. In both cases, the creditors failed to obtain deficiency judgments within the statutorily prescribed ninety-day period, and then waited months before attempting to assert a deficiency claim in the bankruptcy court.[69]

For the reasons set forth, the Court concludes that MidFirst's original proof of claim does not satisfy the requirement under A.R.S. 33-814 to bring a deficiency action within ninety days of a trustee's sale. MidFirst failed to exercise its rights under applicable Arizona law, and is now precluded from asserting a deficiency claim in this matter.

---

[68] Docket Entry No. 202, ¶ 3.
[69] MidFirst waited over a year before it attempted to assert any type of deficiency claim in this case.

## C. WHETHER THE DEBTOR'S ADVERSARY PROCEEDING AGAINST MIDFIRST HAS ANY PRECLUSIVE EFFECT

In reviewing the judicial record, evidence, and testimony of the parties, the Court concludes that there is another basis to preclude MidFirst from asserting a deficiency claim. On July 20, 2010, the Debtor filed an Adversary Proceeding against MidFirst to recover prepetition rents on certain properties for the benefit of the bankruptcy estate.[70]  The Adversary Proceeding sought to (a) determine the extent, validity, and priority of liens on property of the estate or property of the Debtor; (b) to determine, avoid, or recover preferences; and (c) order a turn over of property of the bankruptcy estate. As part of the relief requested in the Complaint, the Debtor sought that "any and all claims of the Defendant against the Debtor's chapter 11 estate must be disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfers…"[71] The Court interprets "any and all claims" in this case to include the potential deficiency claim of MidFirst.

Subsequently, MidFirst filed a Motion to Dismiss the Complaint on September 9, 2010. After briefing by the parties and a hearing being held, the Court granted the Debtor leave to amend the Complaint, with the Debtor being advised to not raise issues that were part of the pending appeal or that were resolved in the Stay Relief matter. The Debtor filed an Amended Complaint on November 10, 2010. MidFirst filed a Motion to Dismiss Amended Complaint on December 12, 2010. Before a hearing was held on the matter, the parties agreed to the dismissal of all but two of the claims set forth in the Amended Complaint.[72] According to the parties, at the

---

[70]  Adversary No. 2:10-ap-01353, Timothy Ray Wright vs. MidFirst Bank, a Federally Chartered Savings Association. Debtor sought to recover property under Sections 547, 542 and other provisions of the Bankruptcy Code.

[71]  Adversary No. 2:10-ap-01353, Docket Entry 1.

[72]  See Administrative Case, Docket Entry No. 1222, Page 6, ¶ 18.

time the Joint Motion concerning a settlement was filed, the two remaining issues pending were: 1) whether or not the Appliances located in the Properties were properly regarded as fixtures or personalty; and 2) whether MidFirst had a lien on the Prepetition Rents with respect to the Camelback Property.

The evidence reflects that the parties were engaged in negotiations to resolve the Adversary Proceeding.[73] The parties presented evidence of the correspondence between the former counsel for the Debtor and MidFirst.[74] In the email exchange, counsel for the parties discuss their respective positions on a number of matters, including the viability of a MidFirst deficiency claim. The Debtor remained steadfast in arguing that MidFirst was not entitled to a deficiency claim, as the underlying loan was documented, between the Debtor and MidFirst, as a single-family, residential loan, thereby triggering Arizona's anti-deficiency statute.[75] Conversely, MidFirst believed the improper conversion of the Camelback Property from a single-family residence to a five-unit property transformed the nature of the Property to the extent that Arizona's anti-deficiency statute, A.R.S. § 33-814(G), was not applicable.

Counsel agreed that if MidFirst wished to pursue a deficiency claim, it could do so as a counterclaim to be placed in its answer to the Amended Complaint.[76] In the email exchange dated August 10, 2010, the parties appear to agree that the disagreement on the deficiency issue should not impede a further settlement on the issues already agreed to by the

---

[73] Exhibit P and Q.  The parties engaged in negotiations to resolve the Adversary Proceeding, not to enter into the Agreed Order, as MidFirst asserts.

[74] Id.

[75] Exhibit P, August 10, 2010 email between counsel for MidFirst and counsel for the Debtor.

[76] Exhibit P, at 2, Lines 1-6 at the top of the page.

parties.[77] Moreover, MidFirst's counsel acknowledged that, if necessary, the parties could reserve their rights on the deficiency issue, letting the Court determine the matter. However, in correspondence dated August 17, 2010, MidFirst's counsel advises Debtor's counsel that MidFirst still believes that MidFirst is entitled to an unsecured deficiency claim on the Camelback Property.[78] Again, Debtor's counsel reiterates the Debtor's opposing view on the issue.[79] Given the prior email exchange between the parties, MidFirst should have filed an answer, with the counterclaim asserting a deficiency claim, or MidFirst should have preserved its rights to assert such a claim in any order settling the Adversary Proceeding. MidFirst did neither.

What is clear to the Court from this correspondence is that the deficiency claim was part of the ongoing settlement dialogue between the parties. As a result, when the Court reviewed and granted the Joint Motion to compromise the claims between the parties, the Court understood the resolution to include "all claims," including the deficiency claim. This especially made sense in light of the Debtor's agreement to transfer prepetition rents derived from the Properties to MidFirst. The Debtor had previously asserted that MidFirst had no assignment of rents agreement concerning the Camelback Property. Furthermore, in reviewing the Joint Motion, the parties did not reserve their rights on any issues. There is no such carve-out or reservation of rights regarding a deficiency claim in the Joint Motion or the Order. Instead, the language in the Joint Motion states that the parties seek to "resolve all pending claims

---

[77] Id.

[78] Exhibit Q, August 17, 2010 email between MidFirst's former counsel and Debtor's former counsel.

[79] Id.

remaining" in the Adversary Proceeding.[80] The Joint Motion specifically provides that "the Adversary Proceeding and all claims brought in connection therewith [would] be dismissed with prejudice following the entry of the Agreed Order within five days of the approval of the Agreed Order."[81]  An agreed Order approving the compromise was entered on June 8, 2011.  Also of concern to the Court is that MidFirst did not file the Amended Proof of Claim asserting the deficiency claim until August 22, 2011, well after the dismissal of the Adversary Proceeding, and after MidFirst had retained new counsel.  MidFirst has provided no explanation for this additional lapse in asserting any deficiency claim.

Based upon the facts and record in this case, the Court holds that as result of the aforementioned Joint Motion and subsequent Order approving and settling all claims in the Adversary Proceeding, MidFirst is now barred by res judicata from asserting a deficiency claim. Res judicata, also known as claim preclusion, bars a subsequent action when "the earlier suit . . . (1) involved the same 'claim' or cause of action as the later suit, (2) reached a final judgment on the merits, and (3) involved identical parties or privies."  Sidhu v. Flecto Co., 279 F.3d 896, 900 (9th Cir. 2002); In re International Nutronics, Inc., 28 F.3d 965, 968 (9th Cir. 1994).  Res judicata bars all grounds for recovery which could have been asserted, whether they were or not, in a prior suit between the same parties on the same cause of action. Clark v. Bear Stearns & Co. Inc., 966 F.2d 1318 (9th Cir. 1992). A final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit. Taylor v. Sturgell, 553 U.S. 880 (2008).

---

[80]  See Administrative Case, Docket Entry No. 1222.
[81]  Id., Page 7, ¶ H.

Here, the parties seek a determination on the existence of a deficiency claim. It is the Court's belief that resolution of "all claims" in the settlement of the Adversary Proceeding encompassed said deficiency claim. This settlement between the Debtor and MidFirst resulted in a final agreed order that required the dismissal of the Adversary Proceeding with prejudice. MidFirst's attempt to resurrect this claim, without a specific reservation in the final order dismissing the Adversary Proceeding, months after the settlement, and more than a year after the sale of the Properties, is without a legal basis.

## IV. CONCLUSION

Based upon the foregoing, and for the various reasons set forth, the Court will sustain the Debtor's Fifth Ominbus Objection to MidFirst Bank's Proof of Claim. MidFirst's proof of claims 92-1 and 92 are disallowed. The Debtor is directed to upload an order consistent with this Court's Memorandum Decision.

DATED this 28th day of December, 2012

Honorable Sarah Sharer Curley
United States Bankruptcy Judge